MORMAN, Appellant, v. WAGNER, Respondent.

(262 N. W. 78.)

(File No. 7751. Opinion filed July 15, 1935.)

*B. O. Stordahl,* of Sioux Falls, for Appellant.
*Dougherty & Flood,* of Sioux Falls, for Respondent.

WARREN, P. J. Plaintiff brought this action to recover $10,000 damages for the death of a minor daughter, Elizabeth Morman. A verdict having been returned in favor of the defendant Wagner, and a judgment entered thereon, plaintiff has appealed.

Briefly the facts in this case are as follows: C. A. Wagner owned a dairy farm in Minnehaha county, S. D. His actual profession was that of a contractor. He did not live on the farm, but hired one Virgil Comeau and his wife to manage the dairy farm.

The Comeaus occupied the unfurnished dairy farm residence for which they paid no rent. Comeau supplied board and room to the hird hands who worked on the farm, for which Wagner paid him a stipulated amount per month for each hired man. The Comeaus themselves hired one Gladys Morman to assist with the housework and cooking, paying her wages out of their own funds. During the course of the summer, Elizabeth Morman, Gladys' sixteen year old sister, came to the dairy farm to spend a few days. Whether she came as an invited guest or to assist her sister with the housework is in dispute. One evening shortly after her arrival Joe Barenklau, one of the farm hands, wished to shave and preparatory thereto brought an open pail of gasoline into the kitchen to fill the gasoline (pressure) stove. Immediately upon his attempt to fill the tank an explosion occurred which took the lives of Elizabeth Morman and the two small Comeau children and seriously injured Gladys Morman and Joe Barenklau. The stove which caused the explosion had formerly been purchased by Wagner for use in the milk shed located in the barn. During the extremely hot weather, Mrs. Comeau caused the stove to be brought into the kitchen to replace her kitchen range.

Appellant contends that Elizabeth Morman was an invitee at the Wagner dairy farm. The conclusion which we shall presently reach regarding respondent's responsibility for the torts of his farm hand will eliminate the question of Elizabeth Morman's presence as an invitee.

It is appellant's contention that Wagner is responsible for the torts of his farm hand, Joe Barenklau. An examination of the facts shows that Barenklau had finished his work in the field and had eaten his supper. Wanting hot water with which to shave before going away in the evening and observing that the gasoline tank of the stove was empty, he proceeded to get gasoline with which to fill it. No one asked him to fill the tank and his doing so was of his own free will and in no way connected with his work for the respondent Wagner. The cases are innumerable which hold that a master cannot be held liable for his servant's acts or negligence beyond the scope of his employment, even though the injury could not have been committed without the facilities afforded to the servant by the master. In the case of Kish

v. California State Automobile Association, 190 Cal. 246, 212 P. 27, it was held that to determine whether or not a particular act was done in the course of the servant's employment, the act of the servant must be connected directly or indirectly with the business of the employer and be in furtherance of the object for which the servant was employed. In other words, if the act is for the benefit of the employer, either directly or indirectly, the act is within the general scope of the servant's employment, but if the act performed is not in any way connected with the service for which he is employed, but for his own particular and peculiar purposes, then the act is not within the scope of the employment.

In Stewart v. Lafoe, 194 Ky. 655, 240 S. W. 57, 58, the court said in part: "The master is not responsible for the wrongful act or negligence of the servant, unless the act be done or negligence result in execution of the authority, express or implied, given by the master. Beyond the scope of his employment the servant is as much a stranger to his master as any third person; and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master. C., N. O. & T. P. Ry. Co. v. Rue, 142 Ky. 694, 134 S. W. 1144, 34 L. R. A. (N. S.) 200, and cases therein cited."

It is apparent that at the time of the explosion Barenklau was engaged in no act within the scope of his employment. He was not engaged in discharging any duty of him required by respondent. The act was performed by Barenklau for himself personally and the principle of respondeat superior cannot be applied, for where liability is sought to be fastened on a master upon that principle it is important that the relation of master and servant exist and that the act complained of be performed within the scope of the employment. See Penticost v. Massey, 201 Ala. 261, 77 So. 675; Puhlman v. Excelsior Express & Standard Cab Co., 259 Pa. 393, 103 A. 218, and especially at page 219, L. R. A. 1918E, 118, which contains the quotation from 7 LaBatt on "Master and Servant" (1913) § 2513, which reads as follows: "The rule respondeat superior operates only in respect of cases in which it is established by affirmative testimony that at the time when the given tort was committed the relationship of master and servant, or of principal and agents, existed between the party whom it is sought to affect with liability and the actual tort-feasor. Accordingly a

plaintiff whose claim is founded upon the rule cannot succeed if the evidence is insufficient to prove that the tort-feasor was a servant of the defendant, or requires the inference that, * * * though regularly in the employ of the defendant, he was temporarily under the control of another person on the occasion when the injury complained of was inflicted."

In the case of Brinkman v. Zuckerman, 192 Mich. 624, 159 N. W. 316, 317, the court held that: "If a chauffeur, or any other servant, commits an injury while doing something relating to his own affairs exclusively, and in no wise connected with his master's service, there is no rule of the common law that holds the master liable therefor. *And it makes no difference, ordinarily, that the injury is inflicted by the use of some instrumentality belonging to the master.*" (Italics ours.)

We can see nothing in the facts before us which would warrant the conclusion that Barenklau was engaged in or was furthering Wagner's work at the time of the explosion. It seems to us that Barenklau was engaged wholly with his personal affairs and was doing something outside of the scope of his employment. In Traynor v. Keefe Construction Co. et al, 199 Iowa 575, 202 N. W. 218, 219, the Supreme Court of Iowa said: "It is settled law that a master is liable for the negligence and torts of her servant, committed by the servant while acting in the usual course of his employment. It is equally well settled that, when the servant steps aside from his usual course of employment and does something outside of the scope of his employment, the master is not liable for the harm done by the employee, under such circumstances. Golden v. Newbrand, 52 Iowa 59, 2 N. W. 537, 35 Am. Rep. 257, and similar cases."

The evidence is insufficient to affirmatively sustain and establish the fact that Barenklau at the time of the accident was engaged in the scope of his employment.

Appellant contends that the respondent was negligent in furnishing a defective gasoline stove. We are not impressed from the record with the idea that the respondent did furnish such a defective stove. The record, to the contrary, shows that the gasoline stove in question was not knowingly furnished by the respondent but that it was brought into the house by Virgil Comeau who had sole operation and management of the household. It is

true that the legal title to the stove was in the respondent Wagner, but said stove was placed in use by Virgil Comeau, without the knowledge or consent of the respondent, to perform a function in which respondent was in no way interested. The evidence conclusively shows that Comeau was paid an independent consideration for the boarding and lodging of the men and that he had full control of all the details of this operation; that he furnished them meals according to his own judgment, purchased food for them, and was paid a certain amount per month for each man who boarded at the residence furnished and occupied by Comeau. In the furnishing of board to the men, it cannot be said that Comeau was a servant of the respondent.

The court was fully justified in directing a verdict in favor of the defendant as there were no issues of fact which could be properly submitted to the jury.

The judgment and order appealed from are affirmed.

All the judges concur, except POLLEY, J., absent and not sitting.