## UNITED STATES v. LUSHBOUGH et al.

### HOFFMAN v. LUSHBOUGH et al.

#### Nos. 14591, 14595.

United States Court of Appeals
Eighth Circuit.

Dec. 16, 1952.

Francis G. Dunn, Asst. U. S. Atty., Sioux Falls, S. D. (Leo P. Flynn, U. S. Atty., Sioux Falls, S. D., on the brief), for United States.

H. R. Hanley, Rapid City, S. D. (Kelton Lynn and John M. Costello, Rapid City, S. D., on the brief), for Ronald Hoffman.

Julius Skaug, Mobridge, S. D. (H. F. Fellows, Rapid City, S. D., and Pat Morrison, Mobridge, S. D., on the brief), for Estel Lushbough.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

RIDDICK, Circuit Judge.

In August 1950 the United States was making a geological and topographical survey in South Dakota. A number of survey parties, made up of college students known as trainees, were employed in the project under the supervision and direction of Charles E. Harding, Project Engineer of the United States Geological Survey.

The personnel of the surveying parties were recruited from among the students of

the Missouri School of Mines at Rolla, Missouri, for work in the field during the summer vacation beginning about the first of June and ending the first of September. The students recruited for the work, together with their personal effects and the instruments used in their work in the field, were transported from Rolla, Missouri, to the scene of their proposed work in trucks belonging to the United States. On arrival in the field the personnel were divided into survey parties of six with headquarters in different towns convenient to the area under survey.

In its work in the field each party was under the supervision of one of the older trainees known as the party chief. This party chief was charged with the direction of the trainees in his party and had control of a truck belonging to the United States and furnished each party for use in its work. On the transfer of a survey party from one location to another the personnel and their personal effects and equipment were moved in a Government truck. These transfers were made on order of the project engineer under whose supervision all of the work in the field was done. The trainee party chiefs were at all times subject to the orders of the project engineer. There is no suggestion in the evidence that they had authority to transfer a survey party from one location to another or trainees from one party to another, or that they ever ordered such transfers. Their authority was limited to the direction of the operations of their particular party in the field during working hours.

On the night of August 7 the project engineer ordered the transfer of Ronald Hoffman, a member of a party with headquarters at Sturgis, South Dakota, to another party with headquarters at Belle Fourche, South Dakota, and the transfer of a Mr. Brucker from the Belle Fourche party to the Sturgis party. The transfer was made so that the men transferred could get experience in different kinds of work before returning to school. A Geological Survey truck brought Brucker and his personal effects from Belle Fourche to Sturgis and took Hoffman and his personal effects from Sturgis to Belle Fourche. At the time of the transfer Hoffman had some of his clothes in a laundry in Sturgis and Brucker had a pair of work shoes in a repair shop at Belle Fourche. Neither was able to pick up these personal effects before making the transfer.

Warren D. Roach, a trainee, was in charge of the Belle Fourche party. On Friday night, August 11, 1950, after the day's work, Hoffman asked and received permission from Roach to take the Survey truck to Sturgis to get his laundry. Hoffman took the shoes which Brucker had left at Belle Fourche on his transfer to Sturgis. He was accompanied on the trip by Daniel Knock, another trainee. The distance from Belle Fourche to Sturgis by the route followed was 32 miles. Hoffman and Knock reached Sturgis about 8 o'clock in the evening of August 11, delivered Brucker's shoes, and picked up Hoffman's laundry. Afterwards, they attended a double feature movie and later a restaurant for coffee and hamburgers. They left Sturgis for Belle Fourche about 12:30 in the morning of August 12. On the return trip, while Hoffman was driving the truck, he discovered as he came over the top of a hill a car on the highway ahead of him traveling in the same direction without lights. The distance separating the cars was too short for Hoffman to stop in time to avoid a collision. In his effort to avoid a collision, he swerved his truck from the lane in which he was traveling into the left hand lane of the highway where a collision occurred between his truck and a car approaching from the opposite direction driven by one Estel Lushbough.

Lushbough brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C., Section 1346(b), to recover damages for serious injuries sustained by him in the collision. The United States impleaded Ronald Hoffman as a third party defendant on the allegation that Hoffman was liable for any judgment obtained against the United States. The District Court found that the collision was caused by the negligence of Hoffman, an employee of the United States, while act-

ing within the scope of his office or employment. Judgment was entered in favor of Lushbough against the United States for $50,000, and also against Hoffman for the same amount. On the third party complaint the United States was awarded judgment against Hoffman. The United States appeals from the judgment in favor of Lushbough, and Hoffman appeals from the judgment against him in favor of both Lushbough and the United States.

The United States contends that there was no substantial evidence to support the court's finding that Hoffman was acting within the scope of his office or employment at the time of the accident, that the evidence establishes the contributory negligence of Lushbough, and that the trial court committed prejudicial error in excluding evidence offered by the United States.

■ We think there was substantial evidence to support the trial court's finding that Hoffman was guilty of negligence causing the accident, and that Lushbough was not guilty of contributory negligence. The conclusion we have reached on the question whether Hoffman at the time of the collision was acting within the scope of his office or employment by the United States makes it unnecessary to consider the assignments relative to the court's rulings on evidence offered by the United States.

The Federal district courts have jurisdiction under the Federal Tort Claims Act of actions against the United States where the employee at the time of the alleged injury or damage is "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C., Sections 1346(b) and 2674. There is an apparent conflict between the decisions of the courts of appeals, in some instances a conflict more apparent than real, on the question whether Federal courts are bound by the law of the State in which the injury or damage was sustained in determining whether at the critical time and place the employee of the United States was acting within the scope of his office

or employment. In the Fourth Circuit the rule is that in such actions local law is not controlling. United States v. Eleazer, 4 Cir., 177 F.2d 914, 916; United States v. Sharpe, 4 Cir., 189 F.2d 239, 241. In the Sharpe case it is said that the question whether the Federal employee was acting within the scope of his office or employment "involves a question of statutory construction as to which the federal courts are not bound by local decisions but apply their own standards. * * * We look to the federal law and decisions to determine whether or not the person who inflicted the injury was an 'employee of the Government * * * acting within the scope of his office or employment'. We look to the local law for the purpose of determining whether the act with which he is charged gives rise to liability. The Tort Claims Act adopts the local law for the purpose of defining tort liability, not for the purpose of determining the relationship of the government to its employees." And see Williams v. United States, D.C., 105 F.Supp. 208, 209; Hubsch v. United States, 5 Cir., 174 F.2d 7, 9; Problems Under the Federal Tort Claims Act, Yankwich, 9 F.R.D. 143, 150–152, 155–159. Decisions under the Act in which Federal courts apparently applied State law in determining the issue under discussion are Murphey v. United States, 9 Cir., 179 F.2d 743; United States v. Johnson, 9 Cir., 181 F.2d 577; United States v. Wibye, 9 Cir., 191 F.2d 181; and Christian v. United States, 6 Cir., 184 F.2d 523.

■ In this case, however, we are not confronted with a choice between the authorities cited, for whether we apply the local or the Federal law the result is the same. The rule of respondeat superior applies only in cases in which it is established by affirmative evidence that at the time when the given tort was committed the relationship of master and servant or employer and employee existed between the party charged with liability and the actual tort feasor. The rule in South Dakota and in the Federal courts is that an act of an employee done to effect some independent purpose of his own is not within the scope of his employment. Where an employee

causes an injury while engaged exclusively in his own affairs, his employer is not liable although the injury is inflicted by the use of some instrumentality belonging to the employer. Morman v. Wagner, 63 S.D. 547, 262 N.W. 78, 79–80; Lovejoy v. Campbell, 16 S.D. 231, 92 N.W. 24, 25, 26; Skow v. Steele, S.D., 49 N.W.2d 24, 25; Thomas v. Slavens, 8 Cir., 78 F.2d 144, 147; National Battery Co. v. Levy, 8 Cir., 126 F.2d 33; Philadelphia & R. Coal & Iron Co. v. Barrie, 8 Cir., 179 F. 50, 52, 53; Standard Oil Co. v. Parkinson, 8 Cir., 152 F. 681, 682; St. Louis Southwestern Ry. Co. v. Harvey, 8 Cir., 144 F. 806, 808. And to the same effect see the courts of appeals cases cited above.

■ We think it too clear for argument that at the time of the accident in which Lushbough was injured Hoffman was not acting within the scope of his office or employment within the meaning of the Federal Tort Claims Act. Hoffman testified that his duties as a trainee were exclusively in the field. He performed any of the duties required on a level crew or a travelers crew except operating the instruments used in the survey work. While it may be inferred from the evidence that in the course of the day's work he might have been required on the orders of his party chief to drive the Government truck when occasion for his services in that capacity arose, there is no hint in the evidence that after working hours he was obligated or authorized to drive a Government truck in the transportation of personnel or their personal effects and equipment from one location to another. The evidence affirmatively establishes that Hoffman was off duty at the time he borrowed the Government truck to make the trip from Belle Fourche to Sturgis to pick up his personal laundry, and that he was off duty and on his own throughout the time occupied in going to Sturgis and returning to Belle Fourche. In making this trip of 64 miles he was free to select the time of his departure and return and the route to be traveled. He was engaged exclusively upon a personal errand, and nothing in the record indicates that it was in any way connected with the work he was doing for the United States. Whether Roach had authority to authorize the use of the truck by Hoffman for the purpose for which he used it is entirely beside the point. The fact is that Hoffman borrowed the Government truck for his own convenience, and in its use he was not engaged in any way directly or indirectly in the service of the United States. If we consider the question one of fact, there is no substantial evidence in this record to support the finding of the District Judge. It follows that the judgment against the United States must be reversed.

■ We think the judgment against Hoffman in favor of Lushbough must also be reversed. Lushbough brought no action against Hoffman, asked for no judgment against him. Rule 14(a) of the Rules of Civil Procedure, 28 U.S.C. provides that: "The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff". Lushbough asserted no claim against Hoffman. But, conceding for the argument that such an assertion was a formality not required under the Federal Rules of Civil Procedure, Lushbough's right to maintain a claim against Hoffman is prohibited by 28 U.S.C., Section 2676, which provides:

> "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."

The District Court, having awarded a judgment in favor of Lushbough in his action against the United States, could not in the face of the explicit provisions of the Act order judgment against Hoffman in favor of Lushbough in the same action. Prechtl v. United States, D.C., 84 F.Supp. 889, 890; Lauterbach v. United States, D. C., 95 F.Supp. 479, 482. Nor is there any showing in the evidence of the necessary diversity of citizenship as between Lush-

bough and Hoffman. Since the reversal of the judgment against the United States carries with it the reversal of the judgment for the United States against Hoffman, it is unnecessary to consider Hoffman's contention that the United States could not implead Hoffman as a third party defendant in the action.

All judgments appealed from are reversed, and these actions are remanded to the District Court for further proceedings in conformity with this opinion.

COLLET, Circuit Judge, concurs in the result.